UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NEICY MENDOZA, )
    *Plaintiff*, )
v. )
) No.1:22-cv-197-DCLC-CHS
WHITE STAR LOGISTICS, LLC.; )
DAR LOGISTICS, LLC; and )
SOBY LOGISTICS, LLC; )
    *Defendants*. )

## AMENDED REPORT AND RECOMMENDATION[1]

### I. Introduction

This matter is before the Court upon Plaintiff Neicy Mendoza's Motions for Default Judgment as to White Star Logistics, LLC [Doc. 38], Dar Logistics, LLC [Doc. 36], and Soby Logistics, LLC [Doc. 37] (collectively, "Defendants"). The District Court has referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) [Doc. 39]. This lawsuit arises from a motor vehicle accident between a tractor-trailer and an automobile on August 11, 2021. For the reasons stated herein, it is **RECOMMENDED** that the referenced motions be **GRANTED**; that Plaintiff be awarded $1,266,922.27 against Defendants, jointly and severally; and that judgment be entered in favor of Plaintiff against Defendants.

### II. Background

---

[1] This Report and Recommendation is being amended solely to add this notice regarding when the parties must make objections, if any, to this Report and Recommendation. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a forfeiture of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

## A. Identity of Defendants

This is an action for negligence and vicarious liability brought against Defendants, White Star Logistics, LLC, Dar Logistics, LLC, and Soby Logistics, LLC. Plaintiff's complaint also alleges claims of negligent hiring, training, entrustment, supervision, retention, and maintenance. On July 13, 2023, this Court notified Plaintiff [Doc. 40, Notice] that Plaintiff must file proposed findings of fact and conclusions of law which include: (1) the elements of each cause of action for which Plaintiff seeks recovery (with appropriate legal authority); and (2) the types of damages permitted for each cause of action (with appropriate legal authority). Plaintiff did not provide this information with respect to her claims for negligent hiring, training, entrustment, supervision, retention, and maintenance. For that reason, the Court concludes that Plaintiff is not seeking recovery under such claims. Consequently, the Court's focus is solely on Plaintiff's claims for negligence and vicarious liability.

Defendant White Star Logistics, LLC, is a limited liability company incorporated in Ohio on December 16, 2016, with its principal place of business in Ohio (hereinafter referred to as "White Star-Ohio"). Its members are citizens of Ohio and Texas [Doc. 50, Ex. 1]. Saad Adam of 4801 Canyon Trail N, Euless, Texas, is an original member of White Star-Ohio [Doc. 50, Ex. 3]. White Star-Ohio was served with process on August 22, 2022 [Doc. 10], but never responded to the Complaint.

Dar Logistics, LLC, is a limited liability company incorporated in Texas, with its principal place of business in Texas, and whose members are citizens of Texas [Doc. 50, Exs. 5–9]. Dar Logistics was originally incorporated in Texas on March 23, 2018, under the name of White Star Logistics, LLC (not to be confused with White Star-Ohio). On January 14, 2022, White Star Logistics, LLC, of Texas submitted a Certificate of Amendment to the Texas Secretary of State to

change its name to Dar Logistics, LLC ("Dar Logistics"). Saeed Adam and Yasir Baraka, both of 4801 Canyon Trail, Euless, Texas, are original members of Dar Logistics [Doc. 50, Ex. 5]. Dar Logistics was served with process on August 16, 2022 [Doc. 9], but never responded to the Complaint. Dar Logistics is a registered motor carrier with the U.S. Department of Transportation ("DOT") under DOT number 2691445 and MC Number 00004902 [Doc. 1, Complaint ¶ 11]. DOT involuntarily revoked Dar Logistics' for-hire operating authority on March 22, 2022 [*Id.*].

Soby Logistics, LLC ("Soby Logistics") is a limited liability company incorporated in Texas on October 13, 2017, with its principal place of business in Texas, and whose members are citizens of Texas [Doc. 1, Complaint ¶ 13; Doc. 50, Exs. 10-11]. Yasir Baraka of 712 N. Watson Road, Arlington, Texas, is an original member of Soby Logistics. Soby Logistics is a registered motor carrier with the U.S. Department of Transportation under DOT number 3060873 and MC Number 00055164 [Doc. 1, Complaint ¶ 15]. Soby Logistics was served with process on September 30, 2022 [Doc. 17], but never responded to the Complaint.

Despite being served with process, none of the Defendants have responded to the Complaint or entered an appearance in this litigation. The Clerk entered a default as to each of these Defendants on April 14, 2023 [Doc. 28 (White Star-Ohio); Doc. 26 (Dar Logistics); Doc. 27 (Soby Logistics)]. As previously stated, Plaintiff has filed motions for default judgment as to each of these Defendants. Plaintiff is a citizen of the State of Michigan [Doc. 1, Complaint ¶ 1]. Plaintiff seeks damages against Defendants, jointly and severally, in an amount exceeding $75,000.00.

**B.     The Vehicle Collision**

On August 11, 2021, at approximately 12:48 a.m., Ali Hamouda Abdelrahman[2] was driving a tractor-trailer owned by one or more of the Defendants on I-75 southbound in Athens, Tennessee; Mr. Abdelrahman was driving in the passing lane [Complaint ¶¶ 65-69]. Mr. Abdelrahman failed to maintain his lane and drove his truck into the right lane thereby striking a Hyundai sedan operated by Plaintiff Mendoza which was traveling in the right lane [*Id.* ¶ 70]. Mr. Abdelrahman failed to ensure that he could safely change lanes before attempting to do so [*Id.* ¶ 73] and, as a consequence, his vehicle struck the vehicle driven by Plaintiff [*Id.* ¶¶ 69-76]. No act of Plaintiff caused or contributed to the cause of this accident [*Id.* ¶¶ 83-85]. Plaintiff's vehicle was a total loss as a result of the wreck, and Ms. Mendoza was seriously injured as a result of the wreck [*Id.* ¶¶ 86-87].

At the crash scene, Mr. Abdelrahman identified his employer as "White Star Logistics" with an address at 4801 Canyon Trail N, Euless, Texas [*Id.* ¶ 78].[3] A subsequent Inspection Report by the Federal Motor Safety Inspection Administration identified the tractor driven by Mr. Abdelrahman as belonging to Soby Logistics with a VIN number of 3ALACWDT8FDFZ1902 and a registration number of K133669 [*Id.* ¶¶ 80-81]. Mr. Abdelrahman also provided an insurance policy, No. ALP001706, for My Trucking Agent that was associated with Soby Logistics [*Id.* ¶ 79].

At the time of the wreck, Mr. Abdelrahman was transporting property in interstate commerce and was an employee or agent of one or more of the Defendants and was acting within the scope and course of the business of Defendants [*Id.* ¶¶ 66, 29-32, 26]. Mr. Abdelrahman had a

---

[2] While Plaintiff named Ali Hamouda Abdelrahman as a defendant in the Complaint, Plaintiff was not able to serve Mr. Abdelrahman with process. [Doc.8, summons returned unexecuted]. Mr. Abdelrahman is believed to reside in Colorado. [*Id.*].

[3] 4801 Canyon Trail N, Euless, Texas is the address of Saad Adam, a member of White Star-Ohio. It is also the address of Saeed Adam, a member of White Star Logistics, LLC which was incorporated in Texas and later changed its name to Dar Logistics, LLC. It is unclear whether Saad Adam and Saeed Adam are the same person.

duty to operate the tractor-trailer with the same care as other similarly situated tractor-trailer drivers [*Id.* ¶ 43]. One or more of the Defendants owned the tractor-trailer truck driven by Mr. Abdelrahman [*Id.* ¶¶ 23-25]. At all relevant times, Defendants were acting together in a joint enterprise [*Id* ¶ 35].

C. **Evidentiary Hearing on Damages**

An evidentiary hearing was held on October 11, 2023, to determine Plaintiff's damages. Plaintiff's treating Chiropractor, Dr. Iverson, testified at the hearing. The day after the wreck, on August 12, 2021, Plaintiff was examined by Dr. Iverson of Indelicato Family Chiropractic and Wellness in Bradenton, Florida. Plaintiff told Dr. Iverson that she was driving on the interstate in the left lane when her vehicle was side swiped by a tractor trailer from the right lane. She was wearing a seatbelt, but the force of impact caused her head to snap from side to side. Her hip hit the center console. She was only 29 years old at the time of the accident. In relating her medical history to Dr. Iverson, Plaintiff reported only a minor car accident eight years earlier for which she had no treatment. Plaintiff reported no other surgeries, no other health issues, and no prior broken bones. She was taking no medication prior to the August 11, 2021 wreck.

Dr. Iverson, who coordinated Plaintiff's care after the wreck, ordered a battery of orthopedic, neurologic and physical examination tests. At the October 11, 2023 hearing, he testified as follows:

- His initial diagnosis was Cervicobrachial Syndrome, Cervicalgia, Thoracic Pain, Lumbosacral Radicular Syndrome, Cervical sprain/strain, Lumbar sprain/strain, and Thoracic sprain/strain.

- A subsequent MRI performed on August 26, 2021, showed the following:
  o a bulging disk with a posterior vertebral offset at the L4/5 level;

- - transitional L5/S1 level with posterior annular fissure, and facet irritation or inflammation at the L2/4 and L4/5 levels; and
  - a herniated disk at C5/6 level, a bulging disk at C2/3, C3/4, and C4/5 levels. In addition, the cervical spine was straightened suggesting muscle spasm.

- Plaintiff subsequently underwent bilateral cervical radiofrequency ablation for C5, C6, and C7 levels and lumbar radiofrequency ablation for L3, L4, and L5 levels to try to address the pain she was experiencing from the injuries caused by the August 11, 2021 wreck.

- Dr. Iverson diagnosed Plaintiff with:
  - Cervical Segmental Dysfunction complicated by a loss of lordosis from muscle spasm;
  - bulging discs C2-3, C3-4, and C4-5 encroaching on the anterior subarachnoid space;
  - herniated disc C5-6 encroaching the anterior subarachnoid space;
  - Thoracic Segmental Dysfunction;
  - Lumbar Segmental Dysfunction complicated by a bulging disc L4-5 with bilateral foraminal narrowing and a 2 mm posterior vertebral offset;
  - transitional L5-S1 level with annual fissure; and
  - facet irritation at L3-4 and L4-5 levels.

Dr. Iverson further opined to a reasonable degree of medical certainty that:

- Plaintiff's cervical and lumbar spine conditions were directly caused by the August 11, 2021 wreck and are permanent in nature.

- The permanent effects from the injury include chronic pain from prolonged periods of sitting, standing, lifting or driving. In addition, activities of daily living such as housework would cause exacerbations of the underlying conditions.

- Plaintiff's conditions will worsen as she grows older. Specifically, Dr. Iverson is 100% certain she will experience degenerative disc disease in her cervical and lumbar spines. Surgery to address this degenerative disc disease is likely.

- Based on the AMA 5th edition of the guidelines, Plaintiff has suffered a 16% whole body impairment as a result of the cervical and lumbar issues.

- Plaintiff will require future chiropractic care to treat flair-ups of Plaintiff's condition at a cost of $2,500 to $3,000 annually.

- Plaintiff has incurred past medical bills to treat her condition in the amount of $216,922.17 [*See also* Hearing Ex. 13].

- Plaintiff continues to experience pain and discomfort in her cervical, thoracic, and lumbar spine. Plaintiff is 32 years old as of the date of the hearing and, according to the Social Security Life Expectancy Table, will live an additional 49.84 years.

In a supplemental filing after the October 11, 2023 hearing, Plaintiff presented evidence that the anticipated spine surgery will cost between $80,000 to $150,000 [*See* Supp. Ex. A to Oct. 11, 2023 hearing, Doc. 48-1].

Plaintiff Neicy Mendoza testified at the October 11, 2023 hearing that, since the August 11, 2021 wreck, she has had physical therapy for her spine, multiple nerve blocks and injections in her spine, and ablations of her spinal nerves to try to alleviate the pain which is sometimes unbearable. She can no longer work as a manicurist which was her job before the wreck. She can no longer run and play with her children like she used to, and her mother-in-law helps her with household chores. She feels irritable and is less patient with her children because of the pain. She is unable to sleep through the night and must constantly change positions due to pain. Sometimes she sleeps on the floor to alleviate the pain. She cannot drive because of the pain. She frequently takes 800 mg. of Tylenol to address the pain. Simple activities like dusting make her hands feel numb. She continues to receive medical care and will need surgery in the future for her spinal injuries. Anytime she is next to a tractor-trailer on the road she is afraid. Plaintiff has never been employed by Defendants.

Plaintiff seeks $750,000 in noneconomic damages for pain and suffering, loss of enjoyment of life, fear and anguish, and permanent injury. Total compensatory damages sought are:

| Non-economic damages | $750,000 |
|---|---|
| Past Medical Expenses | $216,922.27 |
| Future Chiropractic Expenses | $150,000 |
| Future Surgical Expenses | $150,000 |
| Total | $1,266,922.27 |

Plaintiff also seeks punitive damages against Defendants in the amount of $750,000 for a total award of $2,016,922.27.

### III.  DISCUSSION

This Court has subject matter jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332 because there exists diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000. The procedural requirements for proper service, failure to answer or

otherwise respond to the complaint, and entry of default have been met as to each of the Defendants. *See* Fed. R. Civ. P. 55. Nevertheless, before default judgment can be entered for Plaintiff, Plaintiff must show that her complaint states a claim for which relief can be granted and Plaintiff must establish her damages if those damages cannot be made certain by computation. *Hand v. Wholesale Auto Shop, LLC*, No. 1:18-cv-27-JRG-CHS, 2018 WL 4291792, at *2 (E.D. Tenn. Aug. 22, 2018). When a plaintiff's complaint fails to state a claim upon which relief can be granted, the motion for default judgment should be denied. *Harrison v. Bailey*, 107 F.3d 879, 1997 WL 49955, at *1 (6th Cit. Feb. 6, 1997).[4]

In determining whether the complaint states a claim, the court should accept as true all well-pleaded allegations, except those relating to the amount of damages. *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010); *Long v. Morgan*, 451 F. Supp. 3d 830, 832–33 (M.D. Tenn. 2020) (quoting *In re Family Resorts of America, Inc.*, No. 91-4127, 1992 WL 174539, *4 (6th Cir. July 24, 1992) ("Upon entry of default only those- well-pleaded allegations relating to liability are taken as true.")).

In determining damages upon a motion for default judgment, a court has the discretion to hold an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2) (providing in relevant part that "the court may conduct hearings" [if] it "needs to determine the amount of damages….") As previously indicated, the Court held an evidentiary hearing on the subject of damages on October 11, 2023. Plaintiff also submitted supplemental exhibits to that hearing [*See* Docs. 48 and 50].

---

[4] *See also In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (applying Fed. R. Bankr. P. 7055, which incorporates Fed. R. Civ. P. 55); *see also Parks v. Conley*, 178 F.3d 1295, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Gomba Music Inc. v. Avant*, No. 14-11767, 2016 WL 1529782 at *2 (E.D. Mich. April 15, 2016) ("[e]ven if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law") (quoting *Anderson v. Johnson,* 194 F.3d 1311 (table) (6th Cir. 1999)); *Vinton v. CG's Prep Kitchen and Cafe*, No. 1:09-cv-707, 2010 WL 748221, at * 1 (W.D. Mich. Mar. 2, 2010) ("A default judgment therefore cannot stand on a complaint that fails to state a claim."); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987) (denying motion for default judgment where complaint failed to state a claim).

Plaintiff asserts a claim of vicarious liability against Defendants based on Mr. Abdelrahman's negligence which caused the wreck at issue and Plaintiff's injuries. "[F]ederal courts sitting in diversity should apply 'the law that would be applied by state courts in the State in which the federal diversity court sits' so long as the state rule is not 'incompatible with federal interests.'" *Product Solutions Int'l Inc. v. Aldez Containers*, LLC, 46 F.4th 454, 457–58 (6th Cir., 2022) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001)). Thus, the Court will apply the law of Tennessee to this action.

> Under Tennessee law, the plaintiff in a negligence action must prove each of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct of the defendant that fell below the applicable standard of care, amounting to a breach of the duty owed to the plaintiff; (3) an injury or loss sustained by the plaintiff; (4) causation in fact; and (5) proximate, or legal, causation.

*Burroughs v. Magee*, 118 S.W.3d 323, 327–28 (Tenn. 2003). It is well-established in Tennessee that a driver of a motor vehicle has a duty to exercise reasonable care when operating the vehicle to avoid injuring others. *Coca-Cola Bottling Works v. Brown*, 202 S.W. 926, 927-28 (Tenn. 1918); *Hale v. Rayburn*, 264 S.W.2d 230, 232, (Tenn. App. 1953); *Hall v. Marshall*, 394 F.2d 790, 793 (6th Cir. 1968). In the instant case, Mr. Abdelrahman either drove or allowed his vehicle to drift into the lane which was already occupied by Plaintiff. This action was a breach of his duty to exercise reasonable care. Mr. Abdelrahman's breach of his duty of care was a direct and proximate cause of the wreck which caused Plaintiff's injuries. Consequently, Plaintiff has successfully stated a claim of negligence in her complaint.

Plaintiff has pleaded that Mr. Abdelrahman was an employee or agent of Defendants and that the wreck occurred while he was acting in the scope of his agency or employment with Defendants. In Tennessee, under the doctrine of *respondeat superior*, a principal may be held liable for the acts of its agent. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 346 (Tenn.

2002). Further, under the doctrine of *respondeat superior*, an employer is vicariously liable for the torts of its employees acting in scope of their employment. *Hamrick v. Spring City Motor Co.,* 708 S.W.2d 383, 386 (Tenn. 1986); *Tennessee Farmer's Mut. Ins. Co. v. Am. Mut. Liability Ins. Co.*, 840 S.W. 2d 933, 937 (Tenn. Ct. App. 1992).

In the instant case, Plaintiff has pleaded that the wreck in question occurred while Mr. Abdelrahman was driving a tractor-trailer hauling goods for Defendants. Thus, Plaintiff has adequately pleaded that the wreck occurred while Mr. Abdelrahman was acting in the scope of his agency or employment with Defendants. Plaintiff has also pleaded that Defendants were acting as a joint enterprise.

Under Tennessee law, each member of a joint enterprise "has the power to bind the others and to subject them to liability to third persons in matters which are strictly within the scope of the enterprise." *Robertson v. Lyons*, 553 S.W.2d 754, 757 (Tenn. Ct. App. 1977); *Kidd v. Dickerson*, No. M2018-01133-COA-R3-CV, 2020 WL 5912808 (Tenn. Ct. App. May 7, 2019). Consequently, Plaintiff has sufficiently pleaded facts to establish that each Defendant is jointly and severally liable for the negligence of Mr. Abdelrahman which caused the wreck resulting injuries to Plaintiff.

A prevailing plaintiff in a negligence action may recover economic and non-economic damages. *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W. 3d 414, 419-20 (Tenn. 2013). Economic damages must naturally result from the defendants' wrongful conduct and include medical expenses, future medical expenses, lost wages and lost earning potential. *Id.* at 419. Non-economic damages include:

> pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life. Damages for pain and suffering are awarded for the physical and mental suffering that accompany an injury. Damages awarded for loss of enjoyment of life are intended to compensate a plaintiff for the impairment of the ability to enjoy the normal pleasures of living. Assigning a compensable, monetary value to non-economic damages can be difficult. The assessment of non-economic damages

is not an exact science, nor is there a precise mathematical formula to apply in determining the amount of damages an injured party has incurred. Thus, a plaintiff is generally not required to prove the monetary value of non-economic damages.

*Id.* at 420 (internal citations omitted).

Plaintiff has presented sufficient evidence to support her claim for economic damages: $216,922.27 in past medical expenses and $300,000 in future medical expenses for a total of $516,922.27 in medical expenses directly and proximately caused by the August 11, 2021 wreck. The Court further finds that such medical expenses were reasonably foreseeable as a result of the August 11, 2021 wreck.

Plaintiff also seeks $750,000 in non-economic damages for pain and suffering and loss of enjoyment of life as a result of the August 11, 2021 wreck. Given the degree of pain Plaintiff has suffered and will likely continue to suffer for the next 49 years, and given the degree to which this pain has interfered with her daily activities, most especially her ability to play with and care for her children, the Court concludes $750,000 is a reasonable award for non-economic damages. The Court finds that these noneconomic injuries were directly caused by the August 11, 2021 wreck and were reasonably foreseeable.

Plaintiff has also requested punitive damages in the amount of $750,000. In Tennessee, punitive damages may be awarded for only the most egregious conduct, and the plaintiff must prove that the defendant acted intentionally, maliciously, or recklessly by clear and convincing evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *see also Sanford v. Waugh & Co., Inc.*, 328 S.W.3d 836, 848 (Tenn. 2010); Tenn. Code Ann. § 29-39-104(a). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges*, 833 S.W.2d at 901, n. 3.

Plaintiff contends she can demonstrate that Defendants acted recklessly by showing that Dar Logistics "maintained a priority status from August 2020 until June 2021 for HOS violations." [Doc. 48, Plaintiff's Supplemental brief at 4]. In support, Plaintiff relies on *Cagle v. King's Way USA Transport, Inc.*, No. 2:21-cv-52-RWS (N.D. Ga. Feb. 14, 2023). *Cagle*, however, does not support an award of punitive damages in the present case. *Cagle* also involved a truck accident in which the plaintiff sued the trucking company which employed the driver, as well as other related trucking companies. The *Cagle* court awarded punitive damages against the trucking companies on the ground that the driver was an unqualified driver and the trucking company knew that he was not a qualified driver but hired him to drive their trucks anyway. *Id.* at 39. The Court stated, "[b]ecause of the danger posed by large tractor-trailer trucks on the highway, permitting an unqualified driver to operate a loaded commercial motor vehicle weighing 80,000 pounds is wanton and reckless." *Id.* at 40. There is no allegation or proof before this Court that the driver in this case was unqualified to drive a tractor-trailer and that Defendants knew he was unqualified.

The *Cagle* court also found that the defendants in that case engaged in a practice called "chameleon carriers," i.e., using common management, common control and familial relationship to "reincarnate" motor carriers in an effort to avoid federal motor safety guidelines. *Id.* at 40. The *Cagle* court found that this practice was wanton and reckless and "was a cause of the crash." *Id.* at 40-41. Plaintiff Mendoza has not alleged Defendants engaged in a "chameleon carrier" scheme and that said scheme was a cause of the crash.

The *Cagle* Court also found that the defendants' "negligent hiring, training, retention, and entrustment" of the driver caused the physical and economic harm to the plaintiff and violated federal motor safety guidelines which showed a conscious indifference for the health and safety of others and established by clear and convincing evidence that the plaintiff was entitled to punitive

damages. As previously discussed, Plaintiff Mendoza did not provide to the Court in its proposed findings of fact and conclusions of law the elements of each of these causes of action or the type of damages permitted for that cause of action. Accordingly, the Court concludes Plaintiff has waived those causes of action in her motion for default judgment.

Plaintiff also asserts that she is entitled to punitive damages because Defendants allowed drivers to operate in violation of the hours of service requirement imposed by federal law and, accordingly, had been given a "priority status" from August 2020 until June 2021 for HOS violations. However, there is no allegation or evidence before this Court that this traffic accident was caused because the driver exceeded the hours of service requirement imposed by federal law. The Court finds punitive damages are not warranted in this case.

## IV. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that:

1. Default judgment be entered in favor of Plaintiff against White Star Logistics, LLC, incorporated in Ohio; Dar Logistics, LLC; and Soby Logistics, LLC.

2. Plaintiff be awarded damages as follows:

   | | |
   |---|---|
   | Non-economic damages | $750,000 |
   | Past Medical Expenses | $216,922.27 |
   | Future Chiropractic Expenses | $150,000 |
   | Future Surgical Expenses | $150,000 |
   | Total | $1,266,922.27 |

3. Because White Star Logistics, LLC, incorporated in Ohio; Dar Logistics, LLC; and Soby Logistics, LLC, were acting as a joint enterprise, they should be adjudged jointly and severally liable to Plaintiff for all damages.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE